IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JIMMIE L. RAYNOR                                                                                  PLAINTIFF

v.                      CIVIL NO. 07-5202

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                            DEFENDANT

**MEMORANDUM OPINION**

Plaintiff Jimmie L. Raynor brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**     **Procedural Background:**

Plaintiff protectively filed her current application for DIB on November 26, 2004, alleging an inability to work since May 20, 2004, due to dilated nonischemic cardiomyopathy, moderate to severe and/or moderate mitral insufficiency, a pain disorder associated with both psychological factors and a general medical condition, dysthymia, nicotine dependence and a learning disorder.[1] (Tr. 11). For DIB purposes, plaintiff retained insured status through

---

[1] At the administrative hearing, plaintiff amended her alleged onset date from August 28, 2002, to May 20, 2004. (Tr. 276).

AO72A
(Rev. 8/82)

December 31, 2006. (Tr. 11). An administrative hearing was held on December 15, 2006. (Tr. 251-292).

By written decision dated April 5, 2007, the ALJ found that during the relevant time period plaintiff had an impairment or combination of impairments that were severe. (Tr. 13). However, after reviewing all of the evidence presented, she determined that plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 15). The ALJ found plaintiff retained the residual functional capacity (RFC) to perform sedentary work lifting up to ten pounds occasionally and less than ten pounds frequently; sitting up to six hours in an eight-hour workday; standing and/or walking up to two hours in an eight-hour workday; and occasionally climbing ramps and stairs, stooping, bending, twisting, crouching, crawling, kneeling or balancing. (Tr. 16). The ALJ further found plaintiff was unable to climb scaffolds, ladders and ropes; and was restricted from working at unprotected heights and around dangerous equipment and machines. (Tr. 16). From a mental standpoint, the ALJ found plaintiff was able to engage in work that involved only non-complex, simple instructions and little judgment, work that was learned by rote with few variables, work that involved only superficial contact incidental to work with the public and work that involved supervision that was concrete, direct and specific. (Tr. 16). With the help of a vocational expert, the ALJ determined plaintiff could perform other work as a production worker. (Tr. 21).

Plaintiff then requested a review of the hearing by the Appeals Council, which denied that request on September 28, 2007. (Tr. 3-5). Subsequently, plaintiff filed this action. (Doc.

No. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. No. 4). Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. No. 7, 8).

**II.     Evidence Presented:**

At the time of the administrative hearing on December 15, 2006, plaintiff was twenty-eight years of age and obtained a tenth grade education. (Tr. 256-257). Plaintiff's past relevant work consists of work as a dietary aide, a cashier, a cook and a security guard. (Tr. 271-272).

The pertinent medical evidence during the relevant time period of May 20, 2004, through December 31, 2006, reflects the following. Progress notes dated June 9, 2004, report plaintiff's complaint of a deep cough that started with sinus congestion. (Tr. 201). Plaintiff reported chest pain when she coughed. Plaintiff reported she had been taking over-the-counter Benadryl allergy medication. Plaintiff was diagnosed with bronchitis.

Progress notes dated June 14, 2004, report plaintiff's complaints of dizzy spells and weakness for the past two days. (Tr. 200).

Progress notes date June 29, 2004, report plaintiff wanted a pregnancy test. (Tr. 197). Treatment notes indicate plaintiff was still taking medication for strep-throat. Plaintiff complained of nausea and vomiting. Plaintiff reported she stopped smoking three to four days ago. Plaintiff was assessed with possible pregnancy, fever and pharyngitis. Plaintiff was to continue taking the antibiotics and to follow-up with an OB/GYN.

Progress notes dated August 31, 2004, report plaintiff's complaint of a cough and chest tightness for the past week. (Tr. 196). Plaintiff also complained of an earache and toothache over the past two days. The assessment states acute bronchitis, chronic use of digitek and dentalgia. Ms. Kristy Walker, PA, under the supervision of Dr. Williams, noted plaintiff would be using

3

pulmicort since it was the only category B inhaler. Ms. Walker noted if plaintiff's OB felt it was safe to use other steroid inhalers he could recommend a proper medication.

Progress notes dated September 3, 2004, report plaintiff retruned for a follow-up for her bronchitis. (Tr. 194). Plaintiff reported she was using an Albuterol inhaler and Omnicef. Plaitniff was diagnosed with acute bronchitis. Ms. Walker noted she checked with plaintiff's OB before starting plaintiff on prednisone. Plaintiff was to refrain from the use of tobacco and caffeine.

Progress notes dated September 20, 2004, report plaintiff's complaints of a swollen and sore right jaw. (Tr. 193). Plaintiff's assessment states dental abscess and valvular heart disease. Plaintiff was prescribed an antibiotic.

Progress notes dated September 21, 2004, report plaintiff's complaints of continued jaw pain. (Tr. 192). Treatment notes indicate plaintiff had not called her OB or a dentist as was recommended. Plaintiff was diagnosed with cellulitis of the face. Plaintiff was instructed to contact both her OB and a dentist.

Treatment notes dated December 22, 2004, report plaintiff has mitral insufficiency with a history of congestive heart failure. (Tr. 180-182). Dr. Charles W. Inlow noted plaintiff was pregnant with her third child that was due in February. Dr. Inlow noted plaintiff's heart revealed a regular rate and rhythm with S4 gallop, no murmurs. The left ventricular list was noted. Plaintiff had trace ankle edema and a normal neurological examination. Dr. Inlow's impression states dilated cardiomyopathy in a patient who is now pregnant. Dr. Inlow indicated plaintiff was to undergo an echocardiogram and to continue with her current medications: Lanoxin, Propanolol, Furesemide, K'Dur, Aspirin, Calcium prenatal vitamin and folic acid.

On January 10, 2005, plaintiff underwent an echocardiogram. (Tr. 178-179). At the time of the procedure plaintiff was in her last trimester of pregnancy. Dr. Inlow noted plaintiff's previous ejection fractions were in the 30-40% range and showed significant mitral insufficiency. Dr. Inlow noted the current echocardiogram showed dilated nonischemic cardiomyopathy with impaired left ventricular function and an ejection fraction of 25-30%; and moderate to severe mitral insufficiency. Dr. Inlow indicated plaintiff could undergo a cesarean section as planned under spinal or general anesthesia. Dr. Inlow wanted plaintiff to return one month postpartum to determine whether plaintiff would need to be restarted on medication.

On February 15, 2005, plaintiff underwent a mental status and evaluation of adaptive functioning examination performed by Dr. Richard D. Back. (Tr. 183- 188). Dr. Back noted plaintiff was accompanied by her boyfriend but indicated she had no difficulty driving. (Tr. 183). Dr. Back noted plaintiff smelled strongly of cigarette smoke. Plaintiff reported she had a heart problem, arthritis in the lower back, shoulders and knees, migraines, a hearing problem, and was easily fatigued. Plaintiff also reported she was dyslexic. Plaintiff denied any inpatient or outpatient treatment. Plaintiff reported she smoked a package of cigarettes a day. (Tr. 184). Dr. Back noted plaintiff had a mildly flat affect but denied depression and suicidal ideation. (Tr. 184). Dr. Back noted plaintiff's concentration was moderately impaired on Serial 3s, her persistence was fair and her pace was markedly impaired on Serial 3s. Plaintiff underwent a Wechsler Adult Intelligence Scale-III test that revealed a Full Scale IQ of 87. (Tr. 185-186). Dr. Back diagnosed plaintiff with Axis 1: pain disorder associated with both psychological factors and a general medical condition, dysthymia and nicotine dependence; and an Axis II: learning disorder. (Tr. 187). Dr. Back noted plaintiff was open and honest but he could not decide if he

5

identified two or more areas with significant limitations in adaptive functioning or if plaintiff's adaptive functioning was consistent with a diagnosis of mental retardation. (Tr. 188).

On March 28, 2005, Dr. Robert M. Redd, a non-examining medical consultant, completed a RFC assessment indicating that plaintiff could occasionally lift or carry ten pounds, frequently lift or carry less than ten pounds; could stand or walk for a total of at least two hours in an eight-hour workday; could sit for a total of about six hours in an eight-hour workday; could push or pull unlimited, other than as shown for lift and/or carry; could occasionally climb, balance, stoop, kneel, crouch or crawl; and that no manipulative, visual, communicative or environmental limitations were evident. (Tr. 231-238). After reviewing the record, Dr. Robert Beard affirmed Dr. Redd's assessment on November 8, 2005. (Tr. 238).

Progress notes dated April 29, 2005, report plaintiff had an abcessed tooth and needed a referral to Dr. Inlow. (Tr. 189). Dr. Ivan Box noted plaintiff's general appearance was good. Dr. Box diagnosed plaintiff with aortic and mitral insufficiency, dental carries and congestive heart failure. Plaintiff was started on Amoxicilin.

In a letter dated April 29, 2005, Dr. Box stated plaintiff was being treated for Aortic and Mitral Value Insufficiency. (Tr. 190). Dr. Box stated plaintiff had a history of congestive heart failure and was being maintained on Digitalis, Lasix, Proponolal and Potassium. Dr. Box noted plaintiff continued to have a Grade III murmur in aortis area and enlarged heart and pretibial edema. Dr. Box noted plaintiff experienced chronic fatigue dyspnic on exertion. Dr. Box opined plaintiff was permanently unable to be gainfully employed.

On September 28, 2005, plaintiff underwent an echocardiogram. (Tr. 210). Dr. Bill F. Mears noted plaintiff's mitral valve was mildly thickened. Plaintiff's ejection fraction rate was

6

approximately 35%. Dr. Mears' impression stated dilated LV with significantly depressed systolic and diastolic function, enlarged left atrium, moderate (significant) mitral insufficiency and mild tricuspid insufficiency.

On September 29, 2005, Dr. Kathryn M. Gale completed a PRTF indicating plaintiff had mild restrictions of her activities of daily living; moderate difficulties in maintaining social functioning; had moderate deficiencies of concentration persistence or pace resulting in failure to complete tasks in a timely manner; and had no repeated episodes of decompensation. (Tr. 215-228). Dr. Gale also completed a mental RFC assessment stating plaintiff has moderate limitations in the following areas: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and the ability to interact appropriately with the general public. (Tr. 211-213). Dr. Gale concluded that plaintiff "is able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variable, little judgement: supervision required is simple, direct and concrete." (Tr. 213).

On January 13, 2006, Dr. Inlow completed a physical RFC assessment. (Tr. 243-244). Dr. Inlow opined plaintiff could occasionally lift/carry fifteen pounds, frequently forty pounds; could stand/walk for a total of three hours out of an eight-hour workday, thirty minutes without interruption; could sit for four hours out of an eight-hour workday, thirty minutes without

interruption; and could never climb or crouch and was limited with her ability to balance, stoop, kneel or crawl. Dr. Inlow opined plaintiff's impairments affected her ability to reach, push and pull. Dr. Inlow also restricted plaintiff from working around heights, temperature extremes, chemicals, dust, fumes and humidity. Dr. Inlow based his findings on a physical examination, clinical history and an echocardiogram dated January 10, 2005.

Progress notes dated January 26, 2006, report plaintiff had upper respiratory symptomatology, including coughing and congestion, for the past several days. (Tr. 248). Upon examination, Dr. Travis Embry noted plaintiff's lungs were clear to auscultation with a little upper respiratory congestion heard. Plaintiff's cough was noted to be a little bit hacking with no rhonchi, rales or other adventitious noises. Dr. Embry noted plaintiff's heart had a one over six systolic murmur and trace edema and good pulses in her extremities. Dr. Embry noted plaintiff needed to establish herself with a physician as Dr. Box was no longer treating her. Dr. Embry noted plaintiff had not had a check in a year and needed prescription refills for Lasix, K-tab, digoxin, propranolol, aspirin, folic acid and Meclomen. Dr. Embry noted plaintiff was taking Skelaxin and Vicodin for her back and opined plaintiff did not need this medication. Dr. Embry recommended treating plaintiff with cough medication as well. Dr. Embry noted plaintiff's financial situation regarding her medications.

Progress notes dated July 15, 2006, report plaintiff presented with dysuria frequency and pain on the right side over the kidney area for the past three days. (Tr. 247). Plaintiff denied nausea, vomiting or diarrhea. Plaintiff also complained of an earache. Dr. Charlotte Endsley noted plaintiff's right ear looked normal besides significant scarring. Plaintiff's abdomen was a little tender over the suprapubic area. Dr. Endsley noted plaintiff's back was tender over the

8

right costovertebral angle area but was not significantly tender over the left. A urinalysis was positive. Plaintiff was diagnosed with right pyelonephritis. Plaintiff was given a Rocephin injection and started on Bactrim. Plaintiff was to return in two weeks for a recheck.

Progress notes dated July 27, 2006, report plaintiff presented for a follow-up for her recent history of pyelonephritis. (Tr. 246). Treatment notes indicate plaintiff has congestive heart failure and valvular disease but is not seeing a physician for these problems. Dr. Embry noted plaintiff could not afford an echocardiogram. Plaintiff report feeling tired at times with minimal exertion. Dr. Embry noted plaintiff's heart had a two over six systolic murmur with a closing click on the right side of the chest. Dr. Embry noted good pulses in plaintiff's extremities and no significant edema. Dr. Embry noted plaintiff was due for a digoxin level, renal profile, and complete blood count. Dr. Embry refilled plaintiff's assistance program medications and noted plaintiff seemed relatively stable. Dr. Embry recommended plaintiff see a cardiologist when she was able noting financial barriers. Plaintiff also reported restless leg syndrome. Dr. Embry opined plaintiff could do some training for a remedial office job. Dr. Embry further opined that plaintiff's lack of finances was a barrier to her health. He also noted plaintiff smoked and recommended that she stop.

### III.   **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider

9

evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)- (f). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § 404.1520.

## IV.  Discussion:

Plaintiff contends that the ALJ erred in concluding that the plaintiff was not disabled. Specifically, plaintiff alleges the ALJ failed to follow the treating physician rule when determining plaintiff's RFC, and that the ALJ failed to properly assess the Listings and fully and fairly develop the record regarding plaintiff's alleged heart impairment.

### A.  Insured Status:

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on December 31, 2006. Accordingly, the overreaching issue in this case is the question of whether plaintiff was disabled during the relevant time period of May 20, 2004, her alleged onset date of disability, through December 31, 2006, the last date she was in insured status under Title II of the Act.

In order for plaintiff to qualify for disability benefits she must prove that, on or before the expiration of her insured status she was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. *Basinger v. Heckler*, 725 F.2d 1166, 1168 (8th Cir. 1984). The medical evidence of plaintiff's condition subsequent to the expiration of plaintiff's insured status

11

is relevant only to the extent it helps establish plaintiff's condition before the expiration. *Id. at* 1169.

**B. <u>Subjective Complaints and Credibility Analysis</u>:**

We now address the ALJ's assessment of plaintiff's subjective complaints during the time period in question. In disability determinations, credibility assessments are the province of the ALJ. *Onstead v. Sullivan*, 962 F.2d 803, 805 (8th Cir. 1992). This court will not substitute its judgment for that of the trier of fact, *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996), nor will we disturb the decision of any ALJ who seriously considers, but for good reason explicitly discredits, a claimant's testimony of disabling pain. *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003). We believe the ALJ adequately evaluated the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), and conclude there is substantial evidence supporting the ALJ's determination that plaintiff's complaints were not fully credible.

The record reflects plaintiff has been diagnosed with chronic heart problem. An echocardiogram performed in plaintiff's third trimester of pregnancy on January 10, 2005, revealed dilated nonischemic cardiomyopathy with impaired left ventricular function and an ejection fraction of 25-30%; and moderate to severe mitral insufficiency. Dr. Inlow noted plaintiff's previous ejection fractions were in the 30-40% range and showed significant mitral

insufficiency. Dr. Inlow indicated plaintiff could undergo a cesarean section as planned under spinal or general anesthesia and recommended plaintiff return one month postpartum to discuss medication. The record fails to show plaintiff returned to see Dr. Inlow following the birth of her child which was in late January 2005. The record indicates plaintiff was taking medication to treat her heart condition in April of 2005 and there is no indication that this medication was not keeping her condition stable.

The administration referred plaintiff for another echocardiogram on September 28, 2005. Dr. Mears noted plaintiff's mitral valve was mildly thickened. Plaintiff's ejection fraction rate was approximately 35%. Dr. Mears' impression stated dilated LV with significantly depressed systolic and diastolic function, enlarged left atrium, moderate (significant) mitral insufficiency and mild tricuspid insufficiency. In January of 2006, Dr. Embry noted plaintiff's heart had a one over six systolic murmur and trace edema and good pulses in her extremities. At that time, Dr. Embry noted plaintiff had not been seen for her heart condition in over one year. In July of 2006, Dr. Embry noted plaintiff still had not been seen by a cardiologist and that she would need an echocardiogram. While the record clearly shows plaintiff has a heart condition, there is no indication that plaintiff's medication is not keeping her condition stable. Furthermore, Dr. Embry opined plaintiff would be able to train for a remedial office job in July of 2006. Based on the evidence of record we find substantial evidence to support the ALJ's determination that while plaintiff's heart condition is a severe impairment it is not a disabling impairment.

Although plaintiff contends that her failure to seek medical treatment is excused by her inability to afford treatment during the relevant time period, plaintiff has put forth no evidence to show that she has sought low-cost medical treatment or been denied treatment due to her lack

13

of funds. *Murphy v. Sullivan*, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship). There is also evidence showing plaintiff continued to smoke throughout the relevant time period. As such, we cannot say that her financial situation prevented her from receiving medical treatment.

With regard to plaintiff's complaints of arthritis with pain in her low back and knees, numbness in her hands and arms, migraine headaches and hearing problem, the evidence of record shows plaintiff sought very little, if any, treatment for these alleged impairments during the relevant time period. In January of 2006, Dr. Embry opined that plaintiff did not need the skelaxin and vicodin for her back pain. In July of 2006, Dr. Endsley noted plaintiff's right ear looked normal besides significant scarring. The medical records fail to show plaintiff sought regular or consistent treatment for an alleged hearing problem. There is also no indication plaintiff sought frequent and on-going treatment for migraine headaches. After reviewing the entire evidence of record, we find substantial evidence to support the ALJ's determination that the above impairments are not severe.

While plaintiff testified that she experiences side effects including nausea, vomiting and fatigue due to her medication. A review of the record fails to show plaintiff complained of these side effects to an examining or treating physician. *Richmond v. Shalala,* 23 F.3d 1441, 1443-1444 (8th Cir. 1994.); *Johnston v. Apfel*, 210 F.3d 870, 873 -874 (8th Cir. 2000).

With regard to mental impairments, the record indicated plaintiff denied depression when she was evaluated by Dr. Back. Furthermore, there is no indication plaintiff sought treatment for a mental impairment during the relevant time period. Plaintiff underwent a Wechsler Adult

Intelligence Scale-III test that revealed a Full Scale IQ of 87. Plaintiff also denied any inpatient or outpatient treatment for a mental impairment. Based on plaintiff's failure to seek treatment for any alleged mental impairment and the medical evidence as a whole, we find the ALJ's finding regarding plaintiff's mental impairment to be supported by substantial evidence of record.

Plaintiff's subjective complaints are also inconsistent with evidence regarding her daily activities. The record reflects plaintiff is able to care for her three minor children ages seven, four and two. In February of 2005, plaintiff reported to Dr. Back that she was able to feed and dress herself with no need of supervision, that she was able to drive familiar routes, that she cooks once a day. (Tr. 187). Plaintiff reported she was able to cook roast, fry chicken, prepare mashed potatoes and make gravy. Plaintiff also reported that she did little housework due to fatigue and pain. However, Dr. Back observed no indications of pain. In November of 2005, plaintiff reported she was able to take care of her two girls but that her family helped with bathing, changing diapers and doing homework. (Tr. 100). Plaintiff reported she was able to take care of her personal needs and to do a little cooking, some dishwashing and fold clothes every day. Plaintiff reported she could drive a car. She also noted she shops for groceries and personal needs with the aid of the scooter. The record also shows plaintiff was able to ride on a four-wheeler "a lot." (Tr. 118). This level of activity belies plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a plaintiff's subjective allegations of disability prior to December 31, 2006. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store).

AO72A
(Rev. 8/82)

Therefore, although it is clear that plaintiff suffers with some degree of limitation, she has not established that she is unable to engage in any gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning her daily activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

### C. RFC Assessment:

Plaintiff also contends that the ALJ erred in finding that she maintained the RFC to perform sedentary work. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). The United States Court of Appeals for the Eighth Circuit has also stated that a "claimant's residual functional capacity is a medical question," *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000), and thus, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam ), must support the determination of the plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." *Nevland v. Apfel*, 2 04 F.3d 853, 858 (8th Cir. 2000). Therefore, in evaluating the plaintiff's RFC, *see* 20 C.F.R. § 404.154599(c), while not limited to considering medical evidence, an ALJ is required to consider at least some supporting evidence from a professional. *Cf. Nevland v. Apfel*, 204 F.3d at 858; *Ford v. Secretary of Health*

16

*and Human Servs.*, 662 F. Supp. 954, 955, 956 (W.D. Ark. 1987) (RFC was "medical question," and medical evidence was required to establish how claimant's heart attacks affected his RFC).

In the present case, the ALJ found plaintiff maintained the RFC to perform sedentary work lifting up to ten pounds occasionally and less than ten pounds frequently; sitting up to six hours in an eight-hour workday; standing and/or walking up to two hours in an eight-hour workday; and occasionally climbing ramps and stairs, stooping, bending, twisting, crouching, crawling, kneeling or balancing. The ALJ further found plaintiff was unable to climb scaffolds, ladders and ropes; and was restricted from working at unprotected heights and around dangerous equipment and machines. In addition, the ALJ found that due to plaintiff's mental limitations she was able to engage in work that involved only non-complex, simple instructions and little judgment, work that was learned by rote with few variables, work that involved only superficial contact incidental to work with the public and work that involved supervision that was concrete, direct and specific.

In making this RFC assessment the ALJ acknowledges Dr. Box's opinion that plaintiff was permanently unable to be gainfully employed; and Dr. Inlow's medical source statement dated January 13, 2006, opining plaintiff could perform less than sedentary work, but found these opinions were not supported by the objective record. *See Chamberlain v. Shalala*, 47 F.3d 1489, 1494 (8th Cir. 1995) (while treating physicians' opinions are ordinarily entitled to great weight, they are not conclusive and must be supported by medically acceptable clinical or diagnostic data). With regard to Dr. Box, the ALJ pointed out that the question of employability is to be determined by the Commissioner. *See Turley v. Sullivan*, 939 F.2d 524, 527 (8th Cir. 1992)

(physician's conclusion that claimant was unemployable was not a medical opinion but a vocational conclusion outside physician's area of expertise). With regard to Dr. Inlow, the ALJ pointed out that this assessment was based on Dr. Inlow's examination of plaintiff in 2004 and the echocardiogram performed in January of 2005 at which time plaintiff was in her third trimester of pregnancy. The ALJ noted that an echocardiogram performed in September of 2005 revealed a higher ejection fraction rate. Furthermore, Dr. Embry in January of 2006, opined plaintiff could undergo training for a remedial office job. Based on our above discussion of the medical evidence, plaintiff's lack of consistent and on-going treatment for her impairments, and plaintiff's daily activities, we believe substantial evidence supports the ALJ's RFC assessment.

### D.     **Hypothetical Proposed to Vocational Expert:**

After thoroughly reviewing the hearing transcript along with the entire evidence of record, we find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. *See Goff v. Barnhart,* 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, we find that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that plaintiff's impairments do not preclude her from performing other work as a production worker. *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### E.     **Fully and Fairly Developer Record:**

Finally, we reject plaintiff's contention that the ALJ failed to fully and fairly develop the record. While an ALJ is required to develop the record fully and fairly even when a claimant has an attorney, *See Freeman v. Apfel,* 208 F.3d 687, 692 (8th Cir.2000) (ALJ only must order

18

consultative examination when it is necessary for an informed decision), the record before the ALJ contained the evidence required to make a full and informed decision. *See Strongson v. Barnhart,* 361 F.3d 1066, 1071-72 (8th Cir.2004) (ALJ must develop record fully and fairly to ensure it includes evidence from treating physician, or at least examining physician, addressing impairments at issue).

### V.  Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 14th day of August 2008.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)